Filed 10/2/15  Leinberger v. Keystone RV Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| CRIS LEINBERGER,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>KEYSTONE RV COMPANY,<br><br>    Defendant and Respondent. | G049341<br><br>(Super. Ct. No. 30-2011-00478701)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Kirk H. Nakamura, Judge.  Affirmed.

Anderson Law Firm, Martin W. Anderson and Jeffrey Kane; Law Office of Quyen Tu and Quyen Tu for Plaintiff and Appellant.

Walker, Wright, Tyler & Ward, J. Randolph Huston and Michelle E. Reed for Defendant and Respondent.

## INTRODUCTION

Cris Leinberger appeals from a postjudgment award of attorney fees after his lemon-law case settled and judgment was entered in his favor against respondent Keystone RV Company, Inc. Leinberger's issue on appeal is that the court did not give his attorney a large enough fee award.

We affirm the order. The trial court has wide discretion in setting the amount of fees, particularly in routine litigation such as a lemon-law case. As Leinberger's counsel himself acknowledged, the trial court has extensive experience with these types of cases; it is therefore in a very good position – certainly better than we are – to determine whether the case has been efficiently litigated and a reasonable amount of time spent on it. We cannot find any abuse of the trial court's discretion here.

## FACTS

Leinberger commenced this litigation in federal court in September 2009. He filed a complaint in Orange County Superior Court under the provisions of the Song-Beverly Consumer Warranty Act, Civil Code sections 1790 et seq., known as the "lemon law" (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 485), in May 2011. For a while these two actions overlapped, until Leinberger dismissed the federal action.

In the state court complaint, Leinberger alleged he had purchased a travel trailer manufactured by Keystone in May 2007, paying $65,000 for it. He claimed the plumbing leaked, the storage compartments flooded, and the tires blew out, all while the trailer was under warranty. The manufacturer neither fixed the defects nor repurchased the trailer. Leinberger sought damages, as well as penalties and attorney fees under Civil Code section 1794. Keystone filed two demurrers (one based on another action pending) and a motion for summary judgment.

Eventually, the case was set for a jury trial in late April 2013; it trailed for two days, then transformed into a court trial, and was postponed for two weeks. At the end of that time, Leinberger accepted Keystone's offer to settle. Judgment was entered in

2

Leinberger's favor in the amount of $72,500 on May 16, 2013, with attorney fees to be determined later.

Leinberger then made a motion for an award of attorney fees in the amount of $119,862. This amount represented the fees of two attorneys, each billing at $475 per hour for 252 hours.[1] After a hearing, the court granted the motion, but awarded $60,000. The court found that the attorneys' hourly rate of $475 was unreasonably high, compared to the prevailing hourly rate for similar work. A reasonable rate was $330. Moreover, too much time was spent on the case; the reasonable amount of time was 180 hours. And it was not necessary to have two attorneys handling the matter.

## DISCUSSION

We review the amount of an attorney fee award under the Song-Beverly Consumer Warranty Act for abuse of discretion. (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 998.) Civil Code section 1794, subdivision (d) provides: "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action."

The code section requires the trial court to perform an analysis that differs somewhat from the usual determination of "reasonable attorney fees" specified in many statutes. (See, e.g., Civ. Code, § 1780, subd. (e) [award under Consumer Legal Remedies Act]; Civ. Code, § 2983.4 [award under Automobile Sales Finance Act].) This statute requires the trial court to determine the actual time expended and then to ascertain whether under all the circumstances of the case the amount of actual time expended and

---

[1] Leinberger's attorneys had a variation of a contingency agreement with him. The fees would be waived if the client did not prevail. If he did prevail, the attorneys would not take a percentage of the recovery but would rather be compensated at their hourly rate of $475.

3

the monetary charge being made for the time expended are reasonable. If the time expended or the monetary charge being made for the time expended is not reasonable, then the court must award attorney fees in a lesser amount. A prevailing buyer has the burden of "showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" (*Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 816.)

In this case, the trial court used the lodestar method to calculate fees. It multiplied the reasonable hourly rate by the reasonable number of hours, a calculation "[f]undamental to [the court's] determination." (*Serrano v. Priest* (1977) 20 Cal.3d 25, 48 (*Serrano*).) This method of determining attorney fees applies to fee awards under Civil Code section 1794, subdivision (d). (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 818-819.)

As our Supreme Court explained in *Ketchum v. Moses* (2001) 24 Cal.4th 1122 (*Ketchum*), the trial court may adjust the lodestar figure – "the basic fee for comparable legal services in the community" – based on factors such as "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. [Citation.] The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." (*Id.* at p. 1132.) The "lodestar reflects the general hourly rate for a *fee-bearing* case; it does *not* include any compensation for contingent risk, extraordinary skill, or other factors a trial court may consider . . . ." (*Id.* at p. 1138.) The enhancement is intended to provide compensation for the risk that the attorney will not be paid at all. (*Ibid.*) When all is said and done, the "'experienced trial judge is the best judge of the value of professional services rendered

4

in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' [Citations.]" (*Serrano, supra,* 20 Cal.3d at p. 49.)

Leinberger's motion in the trial court addressed only the two features of the basic lodestar calculation: the hours spent and the billing rate. It did not touch upon the novelty and difficulty of the questions involved, the extraordinary legal skill they required, or any other factors that a court considers in deciding whether to augment the lodestar figure. The trial court was given no basis to revise this figure upward.

On appeal, Leinberger argues the trial court abused its discretion in reducing the hourly rate from the requested $475 to $330 and in reducing the number of hours from 252 to 180. We address each in turn.

As to the hourly rate, Leinberger argues that the evidence of the lawyers' hourly rate was unrebutted and therefore required the court to award fees at that rate; that the trial court failed to take his attorney's particular qualifications into account; and finally that the trial court had no rational reason for reducing the hourly rate.

The evidence of a $475 hourly rate was not, as Leinberger claims, unrebutted. Keystone's counsel submitted a declaration regarding the rate they charged for their lemon-law work – $300 per hour for a partner with 25 years of experience, $210 per hour for a relatively inexperienced associate. Moreover, the orders from other cases – for which Leinberger did not request judicial notice[2] – granting Leinberger's attorneys their fees in the $400 per hour and above range were, in large part, issued in federal court. In other state court cases, the courts granted attorney fees in amounts between $250 and $350 per hour.

---

[2] Whether the trial court could have taken judicial notice of the amounts of the awards if Leinberger had asked for it is open to question. (See, e.g., *Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 130, fn. 7 [court may not take judicial notice of truth of hearsay statements in court files].) Because no request for judicial notice was made, the issue was not raised or resolved.

The lodestar by its nature accounts for the lawyer's accomplishments. "[T]he '"reasonable hourly rate [used to calculate the lodestar] is the product of a multiplicity of factors . . . the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case."' [Citation.]" (*Ketchum, supra,* 24 Cal.4th at p. 1139.) The trial court did not, as Leinberger would have it, fail to take into account his attorneys' experience, qualifications and expertise. The attorneys' qualifications "were presumably included in the hourly rate used to calculate the lodestar." (*Id.* at p. 1142.) The trial court's remark that "[a]n average attorney with modest experience could have successfully handled this case" refers to "the level of skill necessary," not their qualifications, as demonstrated by the fact that the court awarded Leinberger fees at a rate higher than Keystone's lead counsel, a partner with 25 years of experience in the area. The attorney's qualifications are one factor to consider; the level of skill required to litigate the case is another. The trial court clearly took both into account when it set the lodestar.

The court had a rational reason for pegging the hourly rate for the fee award at $330. Defense counsel charged less than that for a comparable level of experience and expertise. Unlike *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140 (*Graciano*), in which the trial court had *no* evidence other than that presented by the plaintiff – evidence unchallenged by the defense – upon which to base an hourly rate (*id.* at p. 155), the court in this case had ample evidence to support a rate of $330 per hour.

The trial court also had a rational basis for cutting the number of hours from 250 to 180. The court determined it was not necessary to assign two high-billing attorneys to handle a routine lemon-law case, such as this one; this allocation of resources resulted in wasted time.[3] Moreover, starting the case in federal court also wasted time.

---

[3] Leinberger argued that one of his attorneys was a former mechanic who could therefore efficiently assess the defects in the trailer. Perhaps so, but a mechanic hired to inspect a motor vehicle would probably not charge $475 per hour.

For example, filing the state court case before dismissing the federal action evoked a demurrer from Keystone based on another action pending. (See Code Civ. Proc., § 430.10, subd. (c).) This entire procedure could have been avoided if the case had been initially filed in state court. Finally, defense counsel stated that Keystone had filed its demurrers and its motion for summary judgment because Leinberger insisted from the outset on a jury trial – a position maintained while the case trailed. Had a jury been waived early on, Keystone's counsel would not have bothered with these motions.

As Leinberger's counsel himself acknowledged during the hearing, the trial court sees a great many lemon-law cases and accompanying fee motions. He even referred to "lemon law mills," recognizing that such complaints are, or can be, rolled out with little expenditure of legal energy.[4] Accordingly, the trial court was well placed to determine what litigating such a case entails and particularly how much it should cost. While Leinberger's attorney alluded to his stellar resume, the trial court found that deploying such big guns was, in effect, overkill. An attorney "'is not necessarily entitled to compensation for the value of attorney services according to [his] own notion or to the full extent claimed by [him]. [Citations.]' [Citation.]" (*Levy v. Toyota Motor Sales, U.S.A., Inc., supra,* 4 Cal.App.4th at p. 816; see *Graciano, supra,* 144 Cal.App.4th at p. 156 [court's task is "to determine the prevailing rate in the community for *comparable* professional legal services"].)

Leinberger certainly has the right to employ the attorney of his choice to litigate his lemon-law case, but that attorney must then be content to be compensated in line with other local attorneys practicing in the field. The trial court in this case exercised its discretion to determine that level of compensation, and Leinberger has not shown how that discretion was abused.

---

[4] Leinberger's attorney argued to the trial court that a typical lemon-law law firm would not have taken this case because it was too "risky," but he never explained what the risk was or how this case differed from a normal case, other than in its length.

## DISPOSITION

The order granting attorney fees is affirmed.  Respondent is to recover its costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.