Filed 8/26/20  Stahl Law Firm v. Apex Medical Technologies CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| STAHL LAW FIRM et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> APEX MEDICAL TECHNOLOGIES INC. et al., <br><br> Defendants and Respondents. | D073155 <br><br><br> (Super. Ct. No. 37-2010-00097839-CU-CO-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Katherine Bacal, Judge.  Affirmed.

Norbert Stahl, in pro. per., for Plaintiffs and Appellants.

Arthur A. Wellman, Jr. for Defendants and Respondents.


Stahl Law Firm, a sole proprietorship, and Norbert Stahl (collectively, Stahl) appeal from an order of the superior court granting Apex Medical Technologies, Inc. (Apex) and Zone Medical LLC (Zone) attorney fees in the

amount of $916,160 pursuant to Civil Code[1] section 1717.  Stahl asserts that the superior court improperly determined that Apex and Zone were the prevailing parties before entry of the judgment in violation of California Rules of Court, rule 3.1702; that Apex and Zone were not entitled to an award of attorney fees under section 1717; and that Apex and Zone failed to meet their burden to prove the amount of attorney fees awarded.  We are not persuaded by Stahl's arguments and affirm the order of the superior court.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from a dispute over legal fees and the quality of the legal services for which those fees were charged.  We have set forth the facts regarding that dispute in our opinion in *Stahl Law Firm v. Apex Medical Technologies Inc. et al.*, D072906 [nonpub. op.], filed concurrently with this opinion.[2]  Accordingly, we will focus our discussion on the facts directly related to the award of attorney fees.

_____

[1]    All further statutory references are to the Civil Code.

[2]    The Zone Defendants filed two requests that we take judicial notice of various portions of the reporter's transcripts from the trial submitted in case number D072906.  As the transcripts were available to the superior court at the time of the its ruling on the motion for attorney fees, and because we incorporate the factual and procedural background from our opinion in case number D072906 here, we hereby grant the Zone Defendants requests.  (See Evid. Code §§ 452, subd. (d), 459; see also Cal. Rules of Court, rule 8.155(a)(1) [at any time, reviewing court may order the record augmented to include additional certified transcripts].)

Mark McGlothlin, an officer of Apex and Zone, executed Stahl's written agreement (the Engagement Letter) engaging him to provide services to the companies related to patent litigation with a competitor (the Patent Litigation).[3] The Engagement Letter stated, in part, "you consent to pay all fees and costs incurred in any bill collection matter."

After the Patent Litigation concluded, Stahl sued Apex, Zone, McGlothlin, and two other company officers, Michael Marasco and Alice DePaul, (collectively, the Zone Defendants) for $103,465.15 in unpaid legal bills (the Malpractice/Fee Litigation). Stahl alleged causes of action for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Quantum Meruit for Services Rendered, Open Book Account, and Account Stated. The Zone Defendants filed a cross-complaint and alleged causes of action against Stahl for professional malpractice and breach of fiduciary duty. The superior court granted a motion for nonsuit as to the professional malpractice cause of action, and the jury returned a verdict in favor of the Zone Defendants on all remaining causes of action.

---

[3] The Engagement Letter is on Stahl Law Firm Letterhead, is addressed to McGlothlin, and is signed, "With best regards, Norbert Stahl." The document itself thus suggest that it was prepared by Norbert Stahl and no party contends otherwise.

The Zone Defendants filed a motion for prevailing party attorney fees, which the superior court heard along with a number of other post-trial motions. The superior court concluded that Apex and Zone were entitled to recover attorney fees as the prevailing parties on the contract causes of action asserted in Stahl's complaint pursuant to section 1717.[4] Stahl appealed from the superior court's ruling on the post-trial motions and, as relevant to this appeal, this court dismissed that portion of the appeal regarding the attorney fees as a non-appealable order. (See D068929 [nonpub.] at pp. 27-30.)

The matter was remanded to the superior court, which then entered judgment in favor of the Zone Defendants. Thereafter, the Zone Defendants filed another motion for prevailing party attorney fees. In support of their motion, the Zone Defendants provided detailed declarations from the two attorneys that represented them in the Malpractice/Fee Litigation, Roger Popeney and Arthur Wellman. Wellman also made his detailed time records available to Stahl and the Superior Court for review.

---

[4]     The court concluded that the individual company officers, McGlothlin, DePaul, and Marasco, could not recover fees because they were not signatories to the contract and, thus, Stahl would not have been able to recover attorney fees from them, as individuals, based on the fees provision therein. However, the court also noted that, due to the way the case was litigated, "it may be impossible to apportion the fees incurred between individual and corporate defendants." The parties do not dispute these findings on appeal.

Stahl filed a written opposition to the Zone Defendant's motion for attorney fees but did not appear at the hearing on that motion. The superior court indicated it previously determined Apex and Zone were the prevailing parties on the contract claims and were entitled to recover attorney fees for their defense of Stahl's complaint, and noted that Stahl had been given the opportunity to review the billing records but declined. Based primarily on the declarations submitted by the two attorneys, the court awarded Apex and Zone $916,160 in attorney fees.

Stahl appeals.

DISCUSSION

I. *Motion to Dismiss*

While the appeal was pending, the Zone Defendants filed nearly identical motions to dismiss this appeal and the appeal in case number D072906 pursuant to the disentitlement doctrine. For the same reasons explained in the concurrently filed opinion in D072906, we also decline to exercise our discretion to dismiss this appeal.

II. *The Superior Court Did Not Err in Awarding Attorney Fees to Apex and Zone*

Turning to the merits, Stahl asserts the superior court erred in awarding Apex and Zone attorney fees because: (1) the superior court improperly determined that Apex and Zone were entitled to attorney fees as

5

the prevailing parties *before* entry of judgment in violation of California Rules of Court, rule 3.1702; (2) Apex and Zone were not entitled to fees pursuant to section 1717 because the language regarding fees in Stahl's retainer agreement does not trigger a section 1717 award and because Stahl could not have recovered fees for his self-representation; and (3) Apex and Zone failed to carry their burden of proof as to the amount of attorney fees incurred on the contract claims.

A. *Standard of Review*

"On appeal this court reviews a determination of the legal basis for an award of attorney fees *de novo* as a question of law." (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 677.) However, the trial court has broad discretion to determine the amount of attorney fees to be awarded pursuant to section 1717. (§ 1717; *PLCM Group v. Dexter* (2000) 22 Cal.4th 1084, 1091, 1094-1095 (*PLCM*); *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213.) As the trial court is in the best position to determine the value of services rendered during the trial over which it presided, we will not disturb the court's decision regarding the amount of attorney fees awarded absent a clear abuse of discretion. (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 148 (*Graciano*).) We do not reweigh the evidence and indulge all presumptions in

support of the superior court's award. (*In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 587.) Any error must be affirmatively shown. (*Ibid.*)

B. *Analysis*

1. *Apex and Zone's Motion for Attorney Fees Was Timely*

California Rules of Court, rule 3.1702, subdivision (b)(1) states, "[a] notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court-including attorney's fees on an appeal before the rendition of judgment in the trial court-must be served and filed within the time for filing a notice of appeal under rules 8.104 [time to appeal] and 8.108 [extending the time to appeal] in an unlimited civil case or under rules 8.822 and 8.823 in a limited civil case." Pursuant to rule 8.104, subdivision (a)(1), a notice of appeal must be filed on or before the earliest of 60 days after the service of a notice of entry of judgment or 180 days after entry of the judgment.

Here, Apex and Zone filed a motion for prevailing party attorney fees along with a number of other post-trial motions and, in an order addressing the various motions, the superior court noted that Apex and Zone were entitled to recover attorney fees as the prevailing parties on the contract claims in Stahl's complaint pursuant to section 1717. Stahl argues the court's ruling was improper because Apex and Zone filed the notice of motion

7

and motion before the appropriate time as set forth in Cal. Rules of Court, rule 3.1702, subd. (b)(1). We disagree.

A plain reading of California Rules of Court, rule 3.1702 indicates that it establishes a deadline by which a party must file its notice of its motion for attorney fees. It does not preclude a party from filing a notice or motion before formal entry of the judgment. (See *Yuba Cypress Housing Partners, Ltd. V. Area Developers* (2002) 98 Cal.App.4th 1077, 1086 (*Yuba*) ["a request for fees incurred before rendition of the judgment in the trial court may be timely even if it is filed prematurely prior to the entry of judgment" and should be construed liberally in favor of sufficiency, particularly where the other party was not misled or prejudiced].)[5]

Regardless, the superior court did not actually award attorney fees in the pre-judgment order and the Zone Defendants, including Apex and Zone, filed a subsequent motion for attorney fees after the judgment was entered. In a separate ruling on that motion, the superior court reiterated its

---

[5] We note that the court in *Yuba* analyzed rule 870.2, "which was in effect at the time of plaintiff's attorney fee motion" in mid-1999. (*Yuba, supra*, 102 Cal.App.4th at p. 1085, fn. 2.) Since then, rule 870.2 has been amended several times and renumbered to rule 3.1702. (See Cal. Rules of Court, Rule 3.1702 [formerly Rule 870.2, renumbered Rule 3.1702 and amended, eff. Jan. 1, 2007, and further amended eff. July 1, 2008, Jan. 1, 2009, Jan. 1, 2011, and July 1, 2013].) None of the post-*Yuba* amendments are material to the analysis relevant to the present appeal and we therefore conclude that the analysis in *Yuba* is applicable.

preliminary ruling that Apex and Zone were entitled to recover section 1717 attorney fees as the prevailing parties on Stahl's complaint, and awarded attorney fees in the amount of $916,160. Thus, even if rule 3.1702 required Apex and Zone to file its fee motion after entry of judgment, as Stahl asserts, Apex and Zone complied with that requirement and, moreover, Stahl was not prejudiced in any way by the previous ruling. (See *Yuba*, *supra*, 98 Cal.App.4th at p. 1086; See *Hoover Community Hotel Development Corp. v. Thomson* (1985) 168 Cal.App.3d 485, 488 [reversal is not required absent a showing of prejudice]; *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 857 [same].)

2. *Apex and Zone Were Entitled to Fees Under Section 1717*

Section 1717 was enacted "to establish mutuality of remedy . . . and to prevent the oppressive use of one-sided attorney fees provisions." (*PLCM, supra*, 22 Cal. 4th at pp. 1090-1091.) It states, in part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a).)

9

As relevant here, where a contract provides a right to recover attorney fees for one party but not the other, the effect of section 1717 is "to allow recovery of attorney fees by whichever contracting party prevails, 'whether he or she is the party specified in the contract or not.' " (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 611.) "[W]hen a defendant defeats recovery by the plaintiff on the only contract claim [or claims] in the action, the defendant is the party prevailing on the contract under section 1717 as a matter of law." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.)

An agreement containing an attorney fees provision is subject to the same rules of construction as any other contract. (See *Mountain Air Enterprises, LLC v. Sundowner Towers LLC* (2017) 3 Cal.5th 744, 751-752 (*Mountain Air*).) Where there is ambiguity in a written form contract the terms are to be construed against the drafter and in favor of the non-drafter. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 248 (*Sandquist*); *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 260 (*Nguyen*).)

In *Kangarlou v. Progressive Title Co, Inc.* (2005) 128 Cal.App.4th 1174 (*Kangarlou*), the court found that the following language in the agreement between the parties was sufficient to trigger application of section 1717: " 'In the event of failure to pay fees or expenses due you hereunder, on demand, I agree to pay the attorney's fees and costs incurred to collect such fees or

10

expenses.'" (*Id.* at p. 1177.) Here, the superior court concluded that the provision in the Engagement Letter stating that Apex and Zone "consent to pay all fees and costs incurred in any bill collection matter" was similarly sufficient to trigger section 1717. We agree.

Stahl asserts that the court erred because language at issue in the Engagement Letter does not specifically refer to *attorney fees*. However, construing the contract against Stahl, the drafter, as required by the law, it is difficult to discern what "fees" the language is referring to if not attorney fees. (See *Sandquist, supra*, 1 Cal.5th at p. 248; *Nguyen, supra*, 4 Cal.App.5th at p. 260.) Similarly, Stahl argues that the contract does not *specifically* provide for an award of attorney fees *incurred to enforce the contract* or that the fees are to be awarded either to one of the parties to the contract or the prevailing party as required by section 1717. Again, construed against Stahl as the drafter, it is difficult to discern any other meaning from the provision. (See *Sandquist*, at p. 248; *Nguyen*, at p. 260.) The Engagement letter is a contract in which Apex and Zone agreed to pay Stahl for legal work at an hourly rate, and the provision at issue permits Stahl, a party to the contract, to recover fees and costs incurred by him in an effort to enforce that agreement.

In a related argument, Stahl asserts he would not have been able to recover attorney fees had he prevailed because, as an attorney, he

11

represented himself and therefore Apex and Zone cannot recover attorney fees pursuant to section 1717. We disagree.

The California Supreme Court addressed a similar issue in *Trope v. Katz* (1995) 11 Cal.4th 274. Trope & Trope, a law firm that successfully represented itself in litigation, argued on appeal that attorneys who represent themselves in litigation should be able to recover attorney fees. (*Id.* at p. 289.) It specifically contended, "if an attorney litigant prevails in an action to enforce a contract but is not allowed to recover attorney fees because he represents himself, his opponent receives a windfall." (*Ibid.*) The Court rejected the argument, stating, "*Any* litigant who chooses to represent himself in an action to which section 1717 applies necessarily assumes the risk that he may be required to pay his opponent's attorney fees if he does not prevail, even though he will not be compensated for his own time and effort regardless of the result." (*Ibid.*) Thus, even though Stahl could not have recovered attorney fees had he prevailed on his contract claims because he chose to represent himself, the Zone Defendants were still entitled to attorney fees under section 1717.

To support his argument, Stahl quotes *Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 820 (*Brown Bark*), "to invoke section 1717 and its reciprocity principles a party must show . . . [that] the opponent would have been entitled to recover attorney fees had the opponent

12

prevailed." When read in context, it is apparent the court in *Brown Bark* was speaking more generally about the contract provision entitling an opposing party to recover attorney fees, not whether the opposing party actually incurred such fees. (*Ibid*.) Significantly, unlike this case, neither party in *Brown Bark* was self-represented. (*Ibid*.) Accordingly, *Brown Bark* is inapposite.

We therefore conclude that the superior court correctly determined that Apex and Zone were entitled to recover attorney fees pursuant to section 1717.

### 3. *The Superior Court Awarded Reasonable Attorney Fees*

Stahl asserts Apex and Zone failed to meet their burden to establish the amount of attorney fees they incurred on the contract claims and the superior court simply "rubber stamped" the Zone Defendants' fee request. We disagree.

The court relied on the declarations of Popeney and Wellman, and those declarations contained detailed information about the number of hours each attorney spent on specific professional activities, including, for example, discovery matters and trial preparation. (See *Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375 ["The law is clear, however, that an award of attorney fees may be based on counsel's declarations, without production of detailed time records."].)

13

Popeney declared that his hourly rate was $350 and he agreed to represent the Zone Defendants on the contract claims on an hourly basis and to take a contingency fee with respect to prosecution of the cross-complaint. He further declared that he spent at least 600 hours defending the complaint and "[b]ecause our affirmative defenses of negligence and breach of fiduciary duty were co-extensive with our cross-complaint, I believe time spent developing those affirmative defenses was necessary to the defense of the complaint." He requested $210,000 in attorney fees.

Wellman declared he routinely charged $350 to $600 per hour for legal work, and that he agreed to represent the Zone Defendants at what he considered to be a reduced rate of $350 per hour. He billed the Zone Defendants 2,043.6 hours, which did not account for all of the time that he devoted to the matter. Wellman offered to make those records available to Stahl or the superior court for inspection. Like Popeney, he declared, "I viewed the affirmative defenses of breach of fiduciary duty and negligence [on the contract claims] as co-extensive with the cross-complaint and did not distinguish in my time entries between defense and prosecuting the cross-

complaint." After reducing the total amount sought based on sanctions previously awarded to him, Wellman requested $706,160.[6]

As the superior court correctly noted, it was entitled to award attorney fees based on the declarations and without detailed billing records. (See *Raining Data Corp. v. Barrenechea, supra*, 175 Cal.App.4th at p. 1375; *PLCM, supra*, 22 Cal.4th at pp. 1095-1096 [trial courts typically determine the appropriate amount of attorney fees by multiplying the time reasonably spent on the matter by the reasonable hourly rate]; *Donahue v. Donahue* (2010) 182 Cal. App. 4th 259, 271 [" 'The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.' "].)

We acknowledge that the fee award is significant, but Wellman explained that the amount of attorney fees billed was a direct result of Stahl's continued use of evasive litigation tactics. Having presided over the trial, the superior court had a complete view of the case and was in the best position to determine whether the hours claimed by the attorneys were reasonable. (See

---

[6]     Wellman also requested reimbursement for counsel that he hired to assist him on the previous appeal, but the superior court denied that request. Neither party disputes that ruling.

15

§ 1717; *PLCM*, *supra*, 22 Cal.4th at pp. 1094-1095; *Graciano*, *supra*, 144 Cal.App.4th at p. 148.)

Stahl also argues that, pursuant to section 1717, Apex and Zone were only entitled to collect attorney fees on the contract claims asserted in the complaint, and that the declarations were not sufficient to allow the superior court to segregate the amount of attorney fees attributable to those claims. Stahl is correct that the recovery of attorney fees pursuant to section 1717 is limited to fees for claims made "on the contract". (See *Santisas v. Goodin* (1998) 17 Cal.4th 599, 615 ["If an action asserts both contract and tort or other noncontract claims, section 1717 applies only to attorney fees incurred to litigate the contract claims"].) However, the superior court correctly determined that it was not necessary to distinguish between time the attorneys spent working on the complaint versus the cross-complaint. As our Supreme Court stated in *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, "Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Id*. at pp. 129-130.) Here, the tenth affirmative defense to Stahl's complaint alleged that Stahl was only entitled to the reasonable value of the services he provided, if any, and the eleventh affirmative defense alleged that the Zone Defendants were entitled to a complete or partial setoff based on Stahl's negligence. These

16

defenses required the Zone Defendants to develop and present essentially the same evidence as necessary to prove the professional malpractice and breach of fiduciary duty claims asserted in the cross-complaint.

Stahl further asserts that the superior court erred by failing to apportion the fees requested between the contract claims and the additional causes of action asserted in his complaint, including Quantum Meruit for Services Rendered, Open Book Account, and Account Stated. To support his assertion, he points out that the superior court noted, in its August 2015 order on the post-trial motions, that "only the first two causes of action (those asserted against Zone and Apex) were truly actions 'on a contract' for which Stahl could have recovered attorney's fees if he prevailed."

Regardless, "[a]pportionment of a fee award between [attorney] fees incurred on a contract cause of action and those incurred on other causes of action is within the trial court's discretion." (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 (*Abdallah*); *In re Tobacco Cases I*, *supra*, 216 Cal.App.4th at p. 589.) The superior court does not abuse that discretion by failing to apportion attorney fees between claims that are so intertwined it would be " 'impracticable, if not impossible' " to separate the time spent on one versus the other. (*Abdallah*, at p. 1111; see also *Reynolds*, *supra*, 25 Cal.3d at pp. 129-130.)

17

Here, even if the additional causes of action in Stahl's complaint were not technically "on the contract", they were alternative bases upon which Stahl sought to collect the outstanding fees due on that contract and, thus, were inextricably intertwined with the contract claims. (See *Abdallah*, *supra*, at p. 1111; *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970 [underlying theory of relief indicated gravamen of complaint was breach of contract despite claims labeled as "account stated" and "open book account"].) Accordingly, we cannot conclude that the superior court abused its discretion by failing to apportion the attorney fees incurred on a contract cause of action and those incurred on other causes of action.

Finally, Stahl asserts that Apex and Zone were only entitled to attorney fees they actually paid or became liable to pay, and that Popeney and Wellman's declarations were not sufficient to establish how many of the claimed hours were actually billed to Apex and Zone. (See *San Dieguito Partnership v. San Dieguito River Valley Reg'l* (1998) 61 Cal.App.4th 910, 918 (*San Dieguito*) [purpose of section 1717 fee provision "is to reimburse a party for attorney fees the party has paid, or to indemnify the party for fees the party has become liable to pay"]; see also *PLCM*, *supra*, 22 Cal.4th at p. 1097, fn. 5 [concluding *San Dieguito* does not require the superior court to use any particular method for calculating fees].)

18

To the contrary, Popeney specifically declared that the requested amount was based on 600 hours that he spent "in defense of the complaint." Similarly, Wellman declared that his detailed time records reflected "2,043.6 hours of billable time, for total fees of $715,260." We view the evidence, including the declarations, in the light most favorable to support the superior court's order. (See *In re Tobacco Cases I*, *supra*, 216 Cal.App.4th at p. 587; *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1292.) Stahl has not presented any affirmative evidence to establish that Zone and Apex had not paid or were not liable to pay the amounts claimed, and thus has not affirmatively shown any error. (*In re Tobacco Cases I*, at p. 587.) Again, having presided over the trial, the superior court was in the best position to determine whether the total number of hours claimed was reasonable. (See § 1717; *PLCM*, *supra*, 22 Cal.4th at pp. 1094-1095; *Graciano*, *supra*, 144 Cal.App.4th at p. 148.)

For the foregoing reasons, we conclude that the superior court did not abuse its discretion in awarding attorney fees in the amount of $916,160 to Apex and Zone.

19

DISPOSITION

The order of the superior court is affirmed.  Respondents are awarded their costs on appeal.


IRION, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.