Filed 2/1/22  Bouquet Plaza SDS v. Kimmel CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BOUQUET PLAZA SDS, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DINA KIMMEL,<br><br>    Defendant and Respondent. | B306042<br><br>(Los Angeles County<br>Super. Ct. No. PC057558) |

APPEAL from an order of the Superior Court of Los Angeles County.  Huey P. Cotton, Judge.  Affirmed.

Goodkin Law Group, Daniel L. Goodkin and Elisabeth A. Turner for Plaintiff and Appellant.

Finnegan & Diba, Kasey Diba and Matthew Sichi for Defendant and Respondent.

_____

Plaintiff and appellant Bouquet Plaza SDS, LLC (Bouquet Plaza) brought this action against defendant and respondent Dina Kimmel (Kimmel) and others for breach of a lease and related guarantees.[1]  Following the parties' settlement and entry of judgment, Bouquet Plaza moved for attorney fees in the amount of $83,631.95.  The trial court's initial tentative ruling proposed awarding Bouquet Plaza $25,000.  After taking the matter under submission, the trial court reduced the award to $15,000.  Bouquet Plaza appeals, contending that the trial court abused its discretion in awarding it the reduced amount of attorney fees.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Factual Background*

On October 22, 2013, Bouquet Plaza, as landlord, entered into a lease with We Rock the Spectrum, LLC, doing business as We Rock the Spectrum Kids Gym, as tenant.  On May 23, 2016, the lease was amended and assigned, adding three additional tenants.  Bouquet Plaza would only agree to the assignment on the condition that Kimmel (and others) enter into a personal guarantee of the lease.  Therefore, on May 23, 2016, Kimmel signed the personal guarantee, agreeing to guarantee the tenants' prompt payment of all sums payable under the lease.

As is relevant to the issues on appeal, the guarantee provides, in relevant part:  "LESSEE/GUARANTOR [Kimmel] shall reimburse LESSOR [Bouquet Plaza], upon demand, for any reasonable costs or expenses incurred by LESSOR in connection

---

[1]     By the time of judgment, all defendants other than Kimmel had filed for bankruptcy.

with any breach or default of LESSEE under this LEASE, whether or not suit is commenced or judgment entered. Such costs shall include, but not be limited to, legal, accounting and appraisal fees and costs incurred for the negotiation of a settlement, enforcement of rights or otherwise."

When the tenants breached the lease, Bouquet Plaza filed an action against Kimmel and the other tenants on February 1, 2017. The complaint alleges two causes of action: breach of lease, and breach of guarantees.

*Litigation Proceedings, including Kimmel's Offer to Settle and Judgment*

Shortly after filing its complaint, Bouquet Plaza filed an application for a writ of attachment against Kimmel, asking that $361,632.63 be secured by the attachment. Bouquet Plaza later reduced its request to $146,753.30. On July 26, 2017, the trial court granted Bouquet Plaza's application as requested. The writ was never enforced.

On or about June 3, 2019, Bouquet Plaza moved for summary judgment. While that motion was pending, Kimmel served on Bouquet Plaza an offer to settle the matter, exclusive of attorney fees, pursuant to Code of Civil Procedure section 998.[2] Bouquet Plaza accepted the offer, and judgment was entered in favor of Bouquet Plaza and against Kimmel in the amount of $89,000.

*Bouquet Plaza's motion for attorney fees*

On November 7, 2019, Bouquet Plaza filed a motion for attorney fees, seeking $83,631.95. According to Bouquet Plaza,

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

3

this matter "should have been a simple breach of Guarantee by . . . Kimmel." But she protracted this litigation with evasive litigation tactics. Despite Bouquet Plaza's efforts to resolve this matter when the dispute arose, Kimmel failed to make any reasonable offer to settle until she served her section 998 offer in July 2019. Kimmel also was allegedly evasive regarding her finances; she repeatedly provided misleading and incomplete documentation in response to discovery requests, forcing Bouquet Plaza to expend additional time and resources to obtain the information it sought.

Bouquet Plaza further argued that Kimmel filed a meritless opposition to its application for a writ of attachment, forcing Bouquet Plaza to incur additional legal fees.

And, while this litigation was pending, Bouquet Plaza learned that Kimmel fraudulently transferred certain real property, which would have provided a source of funds for Kimmel to comply with her obligations under the guarantee.

In light of the foregoing, Bouquet Plaza's fee request was reasonable, and its attorneys' fees were reasonable "for the Los Angeles legal market for individuals of their skill, experience and background."

In support of its motion, Bouquet Plaza submitted a declaration from its attorney. As is relevant to the issues raised in this appeal, attached to his declaration was Exhibit K, which contained "invoices for attorneys' fees for work performed by our firm . . . in connection with this case between February 2017 and October 2019. These invoices have been redacted, at my direction and under my supervision to protect attorney-client privileged information and to exclude fees related to this matter." The

4

declaration went on to describe, in brief paragraphs, the work performed each month.

He summarized that the work performed by Bouquet Plaza's law firm included "preparation of the claim, meeting with witnesses and opposing parties, preparing for and attending depositions in particular of [Kimmel], researching and preparing the Application for Writ of Attachment, responding to [Kimmel's] opposition to such application and attending the hearing, extensive efforts to obtain discovery responses, researching and drafting the Motion for Summary Judgment and preparing exhibits, and extensive communications with opposing counsel in multiple efforts to resolve the dispute."

*Kimmel's opposition*

Kimmel opposed Bouquet Plaza's motion. She argued that Bouquet Plaza's counsel "used this straight forward action as a fee churning exercise. The issues in this action are not complex. There was a lease that called for rent. The tenants failed to pay rent. The lease was guaranteed by Kimmel, but for a limited time which was a point of contention. Tenants were unable to make good on their rent obligations, and [Bouquet Plaza] was to mitigate and relet premises. However, [Bouquet Plaza] refused to allow Kimmel to assist with mitigation and granted new tenants improvements and rent abatement for an excessive amount of time knowing that [Bouquet Plaza would] seek to recover monies from named defendants, and did not mitigate, all of which were further points of contention. Notwithstanding, Kimmel conducted discovery, and she was forthright with her personal financial status, in hopes of resolution. Yet, [Bouquet Plaza] knowingly incurred attorney fees under these circumstances, which were unreasonable." She also argued that

5

the fee request was disproportionate to the recovery Bouquet Plaza obtained. And, Kimmel asserted that Bouquet Plaza's fee request was excessive. Finally, she contended that the fees requested were vague since they were presented in a block billing format. She asked that the trial court reduce the attorney fee award to a reasonable amount.

In a supplemental opposition, Kimmel asked that the trial court limit Bouquet Plaza's attorney fees to $4,830, pursuant to Los Angeles Superior Court, Local Rules, rule 3.214(a).[3]

*Hearing on Bouquet Plaza's motion for attorney fees*

At the hearing on Bouquet Plaza's motion for attorney fees, the trial court's tentative ruling proposed awarding Bouquet Plaza $25,000. It "noted that as a preliminary matter, [Bouquet Plaza's] fee request included amounts billed for paralegal and legal secretary time, which the Court believed were not customary, and not proper."

It also indicated that "the award was based on the perceived lack of complexity of the case and the fact that the case, in the Court's view, did not warrant such attorney's fees to be incurred on what it called a 'straightforward' breach of commercial lease agreement and a guaranty, against [Kimmel], the only non-bankrupt defendant named in the action."

Regarding the evidence in support of Bouquet Plaza's motion, the trial court "noted its concern that the Motion for Fees contained only brief, block summaries of the work performed each month, and was not supported with any itemized invoices."

---

[3] Los Angeles Superior Court, Local Rules, rule 3.214(a) sets a schedule for the amount of attorney fees recoverable by a prevailing party on a contract.

6

Bouquet Plaza's counsel responded that Exhibit K did contain invoices. The trial court replied that the invoices submitted in Exhibit K "were redacted so as to not allow the Court, to ascertain exactly what the services pertained to, and who was performing them for what purpose. The Court did indicate that the billing appeared vague and was heavily redacted, making it difficult for the Court to get a good picture regarding the work that was done [pursuing] . . . Kimmel and pursuing the other (more culpable) Defendants."

Ultimately, the trial court stated that it needed additional time to review the invoices. Thus, it took the matter under submission.

*Trial court order*

On March 26, 2020, the trial court issued its final order, awarding Bouquet Plaza $15,000. At the outset of its ruling, the trial court noted that Kimmel did "not dispute that [Bouquet Plaza was] the prevailing party or that [it was] entitled [to attorney fees] under the contract, [Civil Code] Section 1717, and settlement agreement to its fees. Rather [Kimmel] object[ed] to the amount of the request." The trial court continued: "Statutory attorney fees are ordinarily determined by the court pursuant to the 'lodestar' or 'touchstone' method. Under this approach, a base amount is calculated from a compilation of time reasonably spent and reasonable hourly compensation of each attorney. The base amount is then adjusted in light of various factors. [Citations.]

"The lodestar method vests the court with discretion to decide which of the hours expended by the attorneys were 'reasonably spent' on the litigation. [Citations.] Normally, a 'reasonable' hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant

7

community. [Citation.] The court has discretion to adjust fees downward, especially when it appears that the fee claimant has duplicated efforts or padded fees. [Citation.]

"In this case, several factors weigh in favor of reducing the award. First, the rates charged by the attorneys are reasonable for attorneys litigating on behalf of landlords in breach of lease cases in the Northwest District. . . . However, this court rarely sees billing for paralegals and almost never sees billing for legal assistants or secretaries. Yet [Bouquet Plaza's] counsel has billed for the firm's legal assistant and paralegal . . . and also has included in fees the rate for an individual who appears to be an in-house process server or runner, . . .

"Second, although the billing here is itemized on an invoice, the billing is vague and heavily redacted making it difficult for the court to get a good picture regarding the work that was done pursuing . . . [Kimmel] and pursuing the other (more culpable) defendants. It is clear that a majority of the time was spent pursuing other defendants. [Bouquet Plaza's] attorneys appear to have also performed some property management tasks for which they billed attorney hours. The hours spent on certain tasks appear excessive. For example, as [Kimmel] points out in her brief, [she] propounded minimal and basic discovery. [Bouquet Plaza] billed just over 11 hours for responding yet responded with mostly objections.

"Third, the matter was not a complex case. It was a fairly simple straight forward breach of lease matter. There was little to no law and motion required in the case. Notably, [Kimmel] did not breach the lease but was merely a guarantor and the only solvent defendant. [Bouquet Plaza] argues that much of the litigating revolved around discovery of [Kimmel's] financial

8

situation, which has little to do with whether the lease was breached and whether [Kimmel] signed an enforceable guarantee.

"For these reasons, the court, in the exercise of its discretion and based on its familiarity with what attorney fees on a typical breach of commercial lease should cost grants the attorney fees motion. However, the court must reduce the award.

"[Kimmel] has urged the court to calculate fees according to Los Angeles Superior Court Rule 3.214. Under the formula, . . . the attorney fees award is $4,830. Cases have cautioned that a court must exercise its own discretion and avoid the use of the local rule when a statute conflicts with a local rule. . . . In this case, [Civil Code] section 1717 governs the fee award and requires the court to determine a reasonable fee. After considering the matters above, the court award[s] $15,000 as a reasonable fee."

*Appeal*

Bouquet Plaza's timely appeal ensued.

## DISCUSSION

I. *Standard of review*

As the parties agree, we review an order granting or denying attorney fees, as well as the amount of a fee award, for abuse of discretion. (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 148.) After all, "[t]he 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'—meaning that it abused its discretion." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

9

"'An abuse of discretion occurs only where it is shown that the trial court exceeded the bounds of reason. [Citation.] It is a deferential standard of review that requires us to uphold the trial court's determination, even if we disagree with it, so long as it is reasonable. [Citation.]'" (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 753.) "We will reverse the trial court's determination only if we find that 'in light of all the evidence viewed most favorably in support of the trial court, no judge could have reasonably reached a similar result.'" (*Bates v. Presbyterian Intercommunity Hospital, Inc.* (2012) 204 Cal.App.4th 210, 221.) In other words, "[w]e presume the fee approved by the trial court is reasonable." (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 743.)

The burden is on the party seeking attorney fees to prove that the fees it seeks are reasonable. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 98.) It is also the appealing party's burden to prove that the trial court abused its discretion. (*Ibid.*)

II. *Relevant law*

The fee setting inquiry in California ordinarily begins with the "lodestar," namely the number of hours reasonably expended multiplied by the reasonable hourly rate. (*PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1095.) "'After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [Civil Code] section 1717 award so that it is a reasonable figure.'" (*PLCM Group, Inc. v. Drexler,* at pp. 1095–1096.) In determining "reasonable" compensation, trial courts must carefully review attorney documentation of hours expended;

10

"'padding'" in the form of inefficient or duplicative efforts is not subject to compensation. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.)

In adjusting the lodestar figure, the trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances of the case. (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623–624.) Our Supreme Court has never "carved the factors used [to calculate the lodestar] into concrete or barred consideration of other relevant and nonduplicative factors; nor have the courts of appeal sought to do so." (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 40, fns. omitted.)

The value of legal services performed in a case is a matter in which the trial court has its own expertise. (*Melnyk v. Robledo, supra,* 64 Cal.App.3d at p. 623.)

III. *The trial court did not abuse its discretion in awarding Bouquet Plaza $15,000 in attorney fees*

Applying these legal principles, we conclude that the trial court did not abuse its discretion in awarding Bouquet Plaza $15,000 in attorney fees. At the beginning of its analysis, the trial court noted that it was using the lodestar method to calculate Bouquet Plaza's attorney fees. It then went on to set a reasonable fee. First, it set forth the reasons why it was reducing the fee award. Specifically, this was a straightforward breach of lease matter. While Bouquet Plaza's counsel's hourly rate was reasonable, the trial court determined that it improperly requested certain fees. And, although Bouquet Plaza submitted invoices in support of its fee request, the trial court found those

11

invoices to be vague and too heavily redacted to support Bouquet Plaza's fee request. Rather, it appeared that Bouquet Plaza had charged excessively, treating a relatively simple case as a complex one.

Notably, in setting a reasonable amount, the trial court expressly rejected Kimmel's contention that Los Angeles Superior Court, Local Rules, rule 3.214 applied, limiting Bouquet Plaza to $4,830 in attorney fees. Instead, it held that pursuant to Civil Code section 1717 it was required to determine a reasonable fee.

Under these circumstances, we conclude that the trial court, using its expertise, properly set the value of legal services provided. (*Melnyk v. Robledo*, *supra*, 64 Cal.App.3d at p. 623.) Its determination was not arbitrary.

Urging us to reverse, Bouquet Plaza argues that the trial court erred in arbitrarily reducing its fee award when itemized invoices supporting the fee request were provided in Exhibit K.[4] We have carefully reviewed the invoices submitted as Exhibit K. As the trial court aptly noted, the invoices are vague and highly redacted, rendering it virtually impossible to assess the work done by counsel. For example, many of the invoice entries provide, in block format, that counsel "[r]eview[ed]," "analyze[d]," and conducted "[r]esearch." And counsel charged for tasks and personnel that the trial court found inappropriate. Thus, the trial court determined that hours spent on certain tasks appeared excessive. The trial court's assessment of the invoices is

---

[4] At times, Bouquet Plaza argues that the trial court mistakenly indicated that the motion for attorney fees was not supported by itemized invoices. Not so. As set forth in the trial court's order, it specifically reviewed the invoices in Exhibit K.

supported by the evidence. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1318–1319 ["[s]ubstantial evidence supports the trial court's conclusion counsel leavened the fee request with" overinclusive, unculled, redundant, redacted, and padding billing entries, thereby "destroying the credibility of the submission and . . . justifying a severe reduction"].)

Relying upon *Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, Bouquet Plaza defends its redaction of the invoices on the grounds that it was protecting the attorney-client privilege. The argument is irrelevant. Regardless of whether Bouquet Plaza properly redacted its invoices or went too far with its redactions, based upon what was presented to the trial court, coupled with the trial court's familiarity with the issues in this case, the trial court acted well within its discretion in setting the fee award at $15,000.

Bouquet Plaza further argues that the trial court erred in implicitly finding that "fees should be apportioned between the defendants, or that Kimmel's fees be reduced on account of conduct by the other defendants." According to Bouquet Plaza, the plain language of the guarantee makes Kimmel liable for all fees incurred in this litigation. Bouquet Plaza's argument notwithstanding, it is not clear that that was the basis for the trial court's reduction of the fee request. Rather, as pointed out by Kimmel in her respondent's brief, it seems that the trial court's reference to Bouquet Plaza's pursuit of other defendants was simply a comment on the vagueness of counsel's bills.

Regardless, we need not determine whether Bouquet Plaza's argument and interpretation of the guarantee is correct. "We will uphold the decision of the trial court if it is correct on any ground. [Citation.]" (*Schubert v. Reynolds* (2002) 95

13

Cal.App.4th 100, 110.) And, for the reasons set forth above, the trial court's order is correct.

In addition, Bouquet Plaza contends that the trial court improperly imposed a downward adjustment of its fee request based on the faulty notion that it could set an appropriate fee based upon comparable litigation. That is not what occurred here. Rather, the trial court considered a variety of permissible factors and properly reduced the amount of fees requested to one that was reasonable. (*Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1183, fn. 1, ["After making the lodestar calculation, the court may augment or diminish that amount based on a number of factors specific to the case"], i*d.* at p. 1186 ["A trial court is also justified in reducing a claim if it believes the billing is unjustly inflated"].)

In much of its opening brief, Bouquet Plaza contends that the trial court's order must be reversed because it does not provide an adequate explanation in support of its ruling. We are not convinced. The trial court reviewed the parties' moving papers and evidence. It entertained oral argument. It took the matter under submission in order to review the exhibits thoroughly. After all this, the trial court issued a five-page minute order setting forth its reasons for granting Bouquet Plaza's motion, yet reducing the fee award. Its order is sufficiently detailed. (See *Ketchum v. Moses*, *supra*, 24 Cal.4th at pp. 1140–1141; *Gorman v. Tassajara Development Corp.*, *supra*, 178 Cal.App.4th at p. 101 ["there is no general rule requiring trial courts to explain their decisions on motions seeking attorney fees" so long as the trial court's rationale for its award is apparent on the face of the record].)

14

To the extent Bouquet Plaza requests reversal based upon statements made in the trial court's initial tentative ruling, those comments were not binding; by definition, they were tentative. After entertaining oral argument and taking the matter under submission, the trial court exercised its discretion and awarded Bouquet Plaza attorney fees. What may or may not have been set forth in the tentative ruling is immaterial. (*Diaz v. Shultz* (1947) 81 Cal.App.2d 328, 332 ["'[I]t is what the court did, and not what the judge of the court stated during the course of the trial, that determines the course of our inquiry upon this appeal, as there is a vital distinction between what the judge of a trial court may say and what the trial court actually does'"].)

## DISPOSITION

The order is affirmed. Kimmel is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
LUI

_____, J.
HOFFSTADT

15